No. 97-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 285

MADISON COUNTY, et al.,

Plaintiffs and Respondents,

v.

STATE OF MONTANA, acting by and

through its office of PUBLIC INSTRUCTION,

and NANCY KEENAN, in her official capacity

as the State Superintendent of Public Instruction,

Defendants and Appellants.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Geralyn Driscoll, Office of Public Instruction, Helena, Montana; Lawrence G. Allen, Department of Revenue, Helena, Montana (Amici Curiae)

For Respondent:

Robert R. Zenker, Madison County Attorney, Virginia City, Montana, (Madison County); R. J. "Jim" Sewell, Jr., Smith Law Firm, Helena, Montana (Ennis School District No. 52); Lance Melton, Montana School Boards Association, Helena, Montana (Amici Curiae)

Submitted on Briefs: March 12, 1998

Decided: November 24, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. The Fifth Judicial District Court, Madison County, entered summary judgment for the Plaintiffs in this declaratory judgment action. We reverse and remand.**

**¶2. The issue is whether the District Court erred in holding that Madison County is not required to distribute tax revenues collected by means of a tax settlement agreement to the State of Montana and other taxing authorities in accordance with statutory levies.**

**¶3. In August 1992, Cyprus Mines Corporation paid $4,432,584 to the Madison County Treasurer pursuant to a settlement agreement resolving a dispute concerning deficiency tax assessments by the Montana Department of Revenue (DOR). Cyprus had two tax liabilities for the calender/production years 1980 through 1987. The larger liability concerned the mines net proceeds tax, pursuant to §§ 15-23-501 through -523, MCA. Cyprus's second tax liability concerned the Resource Indemnity Trust Tax (RITT), imposed pursuant to §§ 15-38-101 through -203, MCA. Under the settlement agreement, Cyprus also paid $67,416 to the Treasurer of the State of Montana.**

¶4. Madison County, wishing to place the settlement proceeds it received into a capital improvement fund, invested all of that money and has reinvested the interest income. The plaintiffs, Madison County taxing districts, political subdivisions, and individual taxpayers (collectively, "Madison County"), brought this declaratory judgment action seeking a ruling that all of the settlement proceeds Madison County received from Cyprus may be distributed to certain Madison County taxing districts under a separate agreement they had reached. The complaint alleged that the State of Montana, through the Office of Public Instruction (OPI), has taken the position that the funds must instead be allocated according to the mill levies in place on the date when the funds were received. That would require, among other things, that funds representing 101 mills must be allocated to state university levies pursuant to § 20-25-423, MCA, and to county and state school equalization aid payments pursuant to OPI's calculations under the statutory requirements of §§ 20-9-331, -333, and -360, MCA. The answer filed by OPI indicated that this was, indeed, OPI's position.

¶5. Madison County moved for summary judgment, and the District Court granted that motion based on the briefs submitted by the parties. Noting that the settlement amount was less than one-third of the actual assessment amount in dispute, the court ruled that under the terms of the settlement agreement the money paid to Madison County was not subject to any claim by the State. OPI appeals.

## DISCUSSION

¶6. Did the District Court err in holding that Madison County is not required to distribute tax revenues collected by means of a tax settlement agreement to the State of Montana and other taxing authorities in accordance with statutory levies?

¶7. This Court's standard of review of a summary judgment ruling is *de novo*. *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663. The party moving for summary judgment must first demonstrate that no genuine issues of material fact exist; if none exist, then the Court must determine whether the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R. Civ.P.

¶8. In this case, the parties agree that there is no issue of material fact and that the question is whether, as a matter of law, the proceeds of the settlement agreement must be distributed pursuant to statutory provisions regarding tax payments. The

**District Court ruled that because the agreement provided for separate payments to the county and the state, it was intended to be a final determination of all debts and obligations between the parties. Similarly, on appeal, Madison County argues that the settlement contract is the full, final, and conclusive agreement between the parties and that its terms may not be avoided or altered.**

**¶9. The District Court noted that the settlement agreement is governed by § 15-1-211(8), MCA, which authorizes the DOR to enter into settlement agreements concerning a taxpayer's liability. In its analysis, the court assumed that the DOR and Madison County had a dispute to settle which was somehow resolved under the settlement agreement. There are no facts in the record establishing this. Furthermore, § 15-1-211(8), MCA, does not address a county's obligations *vis a vis* distribution of tax revenues. That subject is addressed in an entirely different part of the Montana Code. Section 15-1-211(8), MCA, is limited in its scope to allowing DOR to enter agreements concerning taxpayer liability for taxes which DOR administers.**

**¶10. In reaching its conclusion, the District Court ignored not only the limited statutory scope of the agreement, but also the agreement's plain language. The sole purpose of the agreement was to settle Cyprus Mine Corporation's tax liabilities for the years 1980 through 1987. By its express terms, the agreement did not settle the obligations of Madison County, a third party, with respect to the county's statutory obligation to distribute the tax revenue to other taxing authorities. Under a section of the agreement appropriately entitled "Limitations of Agreement", the following language appears:**

This agreement and the mutual releases contained herein apply only to the liability of Cyprus for RITT and net proceeds taxes and interest thereon for calendar/production years 1980 through 1987, inclusive. This Agreement and the releases contained herein do not apply to the RITT or net proceeds taxes for any other calendar/production year or to any other tax or taxes or to the release of any party from any other obligation due another party. [Emphasis added.]

Quite simply, the agreement settled Cyprus's tax liability, not Madison County's statutory obligations to the State of Montana or other entities regarding property tax distribution.

**¶11. In opposing Madison County's motion for summary judgment, OPI filed with the District Court an affidavit in which the DOR's Director denied that DOR had**

entered into an agreement with Madison County which would negate the taxing powers of the State of Montana or any other taxing jurisdiction. OPI states that the DOR could not compromise and settle a property tax dispute with Cyprus by agreeing that Cyprus's property tax liability was zero if it paid $4.4 million to Madison County, which, in effect, is Madison County's argument.

¶12. On its face, the settlement agreement does not specify why the lump sum settlement was paid by two checks, one to Madison County and the other to the State Treasurer. Madison County's position is that this represents the intended ultimate distribution of the settlement monies. However, immediately following the recitation in the settlement agreement that Cyprus shall deliver the two checks, the agreement provides:

The payments above described shall be in consideration for the full release, acquittal and discharge of all deficiency assessments and claims of any kind including interest by the Department against Cyprus for RITT, and net proceeds taxes for calendar/production years 1980 through 1987 inclusive, subject to the provisions of § 15-1-211(8), MCA.

OPI's position is that the two checks represent payment for the RITT, which is payable to the State pursuant to § 15-38-106, MCA, and for the mines net proceeds tax, which is payable to the county treasurer. See § 15-23-507, MCA. Madison County has shown no reason why this explanation of the two checks as divided by type of tax is any less viable than is its explanation that the two checks were divided according to which governmental entity was ultimately entitled to the money.

¶13. The District Court noted as support for its conclusion the absence of any evidence of distribution of the check made out to the Montana State Treasurer. If that check represents RITT funds, however, § 15-38-106(2), MCA, requires that the State deposit that money into the Resource Indemnity Trust Fund. Therefore, the fact that these funds were not distributed to various taxing authorities does not support the District Court's conclusion. Mines net proceeds taxes, on the other hand, are collected by the county treasurer, *see* § 15-23-507, MCA, who must later remit all money belonging to the state to the State Treasurer. Section 15-1-504, MCA.

¶14. The question of how to distribute a property tax settlement which states a dollar amount without allocation based on value or years has been addressed, as OPI argued below, in 41 Att'y Gen. Op. No. 67. In that opinion, the Montana Attorney

General addressed a question concerning distribution of a settlement for disputed taxes on mining property in Butte-Silver Bow County. The taxes involved were RITT and mines net proceeds taxes as well as other natural resources taxes. The Butte-Silver Bow County Attorney asked the Attorney General how the county should divide and distribute the settlement revenues among the various taxing jurisdictions in the county. The Attorney General answered that the settlement revenues should be distributed in proportion to the mills levied for the fiscal year in which the proceeds are payable under the agreement.

Montana statutes are silent with respect to the proper allocation within the county budget of income like the present settlement proceeds. Nonetheless, <u>because Butte-Silver Bow County's portion of the settlement derives from alleged liability under the mines net and gross proceeds taxes, such amounts should logically be allocated among the various county taxing jurisdictions proportionately on the basis of mill levies for the fiscal year during which they are payable</u> under the agreement or any subsequent amendment thereto. This result comports with the County's presumed intent in resolving the disputed tax claims, which was to benefit each taxing jurisdiction through an expeditious and certain settlement. [Emphasis supplied.]

41 Att'y Gen. Op. No. 67, at page 281.

**¶15. In the present case, the District Court concluded that § 15-1-211, MCA, supersedes the above Attorney General Opinion. But because § 15-1-211, MCA, concerns only the first step of the tax process, the determination of a taxpayer's liability, the District Court's conclusion is incorrect. The issue presented in this case, and the Attorney General's opinion, concern one of the next steps in the tax process: how settlement revenues are to be distributed by the county following receipt of the revenues from the taxpayer. Nothing in § 15-1-211, MCA, governs how taxes are to be distributed once they are collected.**

**¶16. Since 1978, a statewide levy of up to six property tax mills has been appropriated to the state general fund for the Montana university system. Section 20-25-423, MCA. Furthermore, under the statutory scheme of equalization aid enacted to render the system of public school funding in this state constitutional pursuant to this Court's opinion in *Helena Elementary School Dist. v. State* (1989), 236 Mont. 44, 769 P.2d 684 amended 236 Mont. 44, 784 P.2d 412, counties are also required to levy and distribute property tax mills county wide and to remit certain mills levied to the**

State for public elementary and high school funding.

¶17. Madison County asserts that application of school funding equalization taxes to Cyprus's settlement for taxes for the years 1980 through 1987 represents improper retroactive taxation. As Madison County points out, not all of the equalization laws were in effect in 1980 through 1987.

¶18. The State did not, however, attempt to levy 1992 mills retroactively against Cyprus. The property tax for years 1980 through 1987 was paid, without allocation by mill or by year, in 1992. No retroactivity issue is present. The issue in dispute is how to distribute the $4.4 million that Cyprus paid in August 1992.

¶19. There is no dispute that Cyprus has taxable property in Madison County and that it now has paid taxes on that property to the Madison County Treasurer. However, Madison County has refused to levy and remit the statutory tax for education. Nothing in the record, the settlement, case law or statute supports a finding or conclusion that the $4.4 million paid to Madison County lost its nature as property tax revenue and became Madison County's funds. This would completely ignore Madison County's obligation to levy the basic education taxes on taxable property in the county and to remit the tax revenues to the State of Montana as set forth in the statutes.

¶20. We hold that the settlement paid by Cyprus to Madison County was property tax revenue which must be distributed according to the mills levied in the year the settlement was paid. We therefore reverse the decision of the District Court. This case is remanded so that the court may dismiss the action and enter a judgment directing the Madison County Treasurer to distribute the $4,432,584 it received from Cyprus, and the accrued interest on that amount, according to the 1992 mills in effect when Madison County received the payment from Cyprus.

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Terry N. Trieweiler concurring in part and dissenting in part.

**¶21. I concur with the majority's conclusion that the District Court erred when it awarded summary judgment to Madison County and the other plaintiffs. I dissent from the majority's conclusion that the defendant State of Montana is entitled to judgment as a matter of law.**

**¶22. Pursuant to § 15-1-211(8), MCA, the director of the Department of Revenue is designated by law as the agent of the State of Montana authorized to settle claims against any taxpayer for taxes due pursuant to state law. That section provides in part that:**

(a) The director of revenue or the director's designee is authorized to enter into an agreement with any taxpayer relating to the taxpayer's liability with respect to a tax administered by the department for any taxable period.

(b) An agreement under the provisions of subsection (8)(a) is final and conclusive, and, except upon a showing of fraud, malfeasance, or misrepresentation of a material fact:

(i) the agreement may not be reopened as to matters agreed upon or be modified by any officer, employee, or agent of this state . . . .

**¶23. Implicit from § 15-1-211(8), MCA, is the director's authority to settle tax claims on any terms he or she deems appropriate.**

**¶24. Pursuant to that statutory authority, the Director for the Department of Revenue executed a three-party settlement agreement to which Cyprus Mines Corporation, the taxpayer, and Madison County, the primary beneficiary of the claimed taxes, were parties. That agreement provided in relevant part that:**

Within ten (10) working days from the date Cyprus receives a fully executed copy of this Agreement, Cyprus shall deliver two checks, one to Madison County, Montana, in the amount of $4,432,584.00, and one to the State Treasurer of the State of Montana in the amount of $67,416.00.

The payments above described shall be in consideration for the full release, acquittal and discharge of all deficiency assessments and claims of any kind including interest by the Department against Cyprus for RITT,

and net proceeds taxes for calendar/production years 1980 through 1987 inclusive, subject to the provisions of § 15-1-211(8), MCA.

¶25. Why Madison County was a party to the settlement agreement is not clear from the face of the agreement. Furthermore, the agreement does not, on its face, as noted by the majority, explain why the settlement proceeds were divided and to be delivered as indicated. I conclude, therefore, that Madison County's involvement with the agreement, together with the terms of the agreement which provide for the distribution of the settlement proceeds, create an intrinsic ambiguity and that the intent of the parties could only have been determined by evidence in addition to the contract itself. The need for extrinsic evidence to explain the intent of the parties in circumstances such as these is plainly anticipated by § 28-2-905(2), MCA, which makes an exception to the rule prohibiting parol evidence when such is necessary to explain an intrinsic ambiguity.

¶26. I would therefore remand this case to the District Court for evidentiary proceedings at which the intent of the parties can be determined.

¶27. I also disagree in two significant respects with the majority's rationale for its conclusion.

¶28. First, I disagree with the majority's conclusion that the state has any right to collect equalization aid payments pursuant to § 20-9-360, MCA. The majority correctly notes that the settlement among the parties pertained to Cyprus Mine Corporation's tax liabilities for the years 1980 through 1987. Section 20-9-360, MCA, which pertains to state equalization aid to the public schools of Montana, was not enacted until 1989 and made no provision for retroactive application. Section 1-2-109, MCA, provides that "[n]o law contained in any of the statutes of Montana is retroactive unless expressly so declared."

¶29. The State has argued, and the majority has agreed, that the settlement proceeds are tax revenue because paid in satisfaction of a claim by the State for taxes due. On that basis, the majority has concluded that the revenue must be disbursed as all other tax revenue. However, the State's and the majority's willingness to trace the source and nature of the settlement proceeds inconsistently ends there. The proceeds could only be revenue for the years during which the State claimed it was entitled to payment from Cyprus. That was the years 1980 through 1987, and during those years the State was not entitled to payment for state school equalization aid

payments pursuant to § 20-9-360, MCA.

¶30. I furthermore disagree that there is any significance to the fact that "[t]he question of how to distribute a property tax settlement which states a dollar amount without allocation based on value or years had been addressed, as OPI argued below, in 41 Att'y Gen. Op. No. 67."

¶31. Legal issues are not answered for courts by the opinions of attorneys general. Those opinions are completely irrelevant in courts of law. As we noted in *O'Shaughnessy v. Wolfe*, (1984), 212 Mont. 12, 16-17, 685 P.2d 361, 363, an attorney general's opinion may bind other government attorneys pursuant to § 2-15-501(7), MCA, however, it has no binding effect on the courts. We gave the following explanation:

Courts never look to administrative interpretation when the language [of a statute] is clear beyond cavil. To hold otherwise would be to say that administrators and executive officials, interpreting the effect of statutes, could undermine the enactments by official action and nullify otherwise validly adopted laws. Thus, the legislative, and even the judicial power would pass to the executive, at least in the negative or vetoing sense.

*O'Shaughnessy*, 212 Mont. at 17, 685 P.2d at 364.

¶32. In summary, I conclude that whatever the county treasurer's normal obligations for collection and disbursement of property tax revenue, those obligations can be altered by an agreement entered into among the obligated taxpayer, the county, and the director for the department of revenue. Whether those obligations were altered based on the settlement agreement which is the subject of this litigation is not clear. Therefore, I would vacate the District Court's order of summary judgment in favor of the plaintiffs and remand to the District Court for an evidentiary hearing at which extrinsic evidence could be presented, following which the District Court could resolve the issue regarding the parties' intent.

¶33. I dissent from the majority's conclusion that the State of Montana is entitled to judgment as a matter of law.

/S/ TERRY N. TRIEWEILER

No